UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATRINA B., | |
| Plaintiff, | Case No. C20-5916-MLP |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by (1) excluding hemochromatosis as a severe impairment at step two; (2) failing to include a function-by-function description in the residual functional capacity ("RFC") assessment; (3) failing to account for Plaintiff's hand limitations, obesity, and mental limitations; (4) discounting lay statements; and (5) relying on controverted vocational expert ("VE") testimony at step five. (Dkt. # 19 at 1-2.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1988, has a high school diploma, and has worked as a fast-food worker, childcare provider, and retail cashier. AR at 213. Plaintiff was last gainfully employed in June 2017. *Id.* at 56.

In April 2017, Plaintiff applied for benefits, alleging disability as of April 18, 2012.[1] AR at 188-94. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 120-22, 126-32. After the ALJ conducted a hearing in December 2018 (*id*. at 50-92), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 32-44.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since April 18, 2012.

Step two: Plaintiff has the following severe impairments: ankylosing spondylitis, obesity, fibromyalgia, degenerative joint disease of the knees, depression, and history of right hip stress fracture.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

RFC: Plaintiff can perform sedentary work with additional limitations: she can occasionally climb ramps and stairs, and can occasionally stoop and crouch. She cannot climb ladders, ropes, or scaffolds. She cannot crawl or kneel. She has unlimited ability to balance. She cannot have concentrated exposure to vibrations or hazards. She can have only moderate noise exposure. She needs a routine and stable work environment.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 32-44.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

---

[1] Plaintiff amended her alleged onset date to June 13, 2017. AR at 32.
[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

1  Commissioner's final decision. AR at 1-7. Plaintiff appealed the final decision of the
2  Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.  The ALJ Did Not Harmfully Err at Step Two**

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v.*

ORDER - 3

1  *Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

2  activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

3  404.1522(b), 416.922(b). "An impairment or combination of impairments can be found 'not

4  severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

5  effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)

6  (quoting Social Security Ruling ("SSR") 85-28). "[T]he step two inquiry is a de minimis

7  screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An

8  ALJ is also required to consider the "combined effect" of an individual's impairments in

9  considering severity. *Id*. A diagnosis alone is not sufficient to establish a severe impairment.

10  Instead, a claimant must show his medically determinable impairments are severe. 20 C.F.R. §§

11  404.1521, 416.921.

12        Plaintiff argues that the ALJ erred in failing to include hemochromatosis as a severe

13  impairment at step two, noting that she has been diagnosed with this condition and that it

14  requires once- or twice-monthly phlebotomy treatments and a Remicade infusion every eight

15  weeks. (Dkt. # 19 at 8-9.) Plaintiff argues that given that the ongoing medical appointments

16  required for her hemochromatosis would preclude regular work attendance, the ALJ erred in

17  failing to find that this condition caused significant workplace limitations.

18        At the outset, the Court notes that Plaintiff does not cite any medical records establishing

19  the length or frequency of appointments associated with her hemochromatosis, pointing only to

20  her hearing testimony. (Dkt. # 19 at 9.) Even assuming that Plaintiff's testimony constituted

21  credible evidence establishing the length and frequency of the appointments, her testimony does

22  not establish that she could not attend work regularly: the VE testified that Plaintiff's one

23

ORDER - 4

scheduled medical appointment plus one unscheduled medical appointment per month "might be tolerated" in an unskilled job.[4] *See* AR at 89.

Moreover, medical evidence in the record does not entirely corroborate Plaintiff's testimony as to the frequency of her hemochromatosis-related appointments. *See, e.g.*, AR at 652 (indicating that Plaintiff's hemochromatosis requires iron studies every six months), 654 (same), 672 (same), 674 (same), 677 (same), 679 (same), 694 (same), 1397 (same), 1611 (same). Other notes reference Remicade infusions, but indicate that this treatment is for Plaintiff's ankylosing spondylitis, not her hemochromatosis. *See, e.g.*, *id*. at 655, 666, 686, 707, 711, 731-32, 738, 756, 784. There are some references to phlebotomy sessions for Plaintiff's hemochromatosis beginning in 2017, apparently on a monthly or every-six-weeks basis. *See, e.g.*, *id*. at 1359, 1361, 1365, 1395, 1692, 1769. Because the record does not show that Plaintiff's hemochromatosis warranted appointments that would preclude work, Plaintiff has not met her burden to show that the ALJ harmfully erred in evaluating her hemochromatosis at step two.

**B.      The ALJ Did Not Harmfully Err in Assessing Plaintiff's RFC**

Plaintiff raises several challenges to the ALJ's assessment of her RFC. RFC is the most a claimant can do despite limitations and is assessed based on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). An RFC must include all of the claimant's functional limitations supported by the record. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). With these standards in mind, the Court turns to consider Plaintiff's allegations of error in the ALJ's RFC assessment.

---

[4] In light of this testimony, any error in the ALJ's failure to account for Plaintiff's appointment-related absences in the RFC assessment is harmless because it would not have altered the ultimate disability determination. *See Goodman v. Berryhill*, 741 F. App'x 530, 530 (9th Cir. Nov. 7, 2018).

*1.     The ALJ Did Not Err in Expressing Plaintiff's RFC*

At step four, the ALJ must identify a claimant's functional limitations or restrictions, and assess his or her work-related abilities on a function-by-function basis, including a required narrative discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996).

Plaintiff contends that the ALJ's RFC assessment fails to satisfy the function-by-function requirement because it describes her exertional abilities in terms of an ability to perform sedentary work, without more specificity as to her ability to stand, walk, and sit. (Dkt. # 19 at 6-8.) The Ninth Circuit recently considered a similar argument and held that reference to an exertional category defined in the regulations and SSR 83-10 adequately defines the exertional capabilities of a claimant. *See Terry v. Saul*, 998 F.3d 1010, 1013-14 (9th Cir. 2021).

As in *Terry*, the Court finds that the ALJ's reference to "sedentary work" as defined in the regulations adequately defines Claimant's exertional abilities, given that SSR 83-10 defines "sedentary work" to require, *inter alia*, mostly sitting, but up to two hours standing/walking, and lifting no more than 10 pounds at one time. *See* 1983 WL 31251 at *5 (Jan. 1, 1983). Accordingly, the Court finds no error in the ALJ's expression of Plaintiff's RFC via reference to a defined exertional category.

Furthermore, to the extent that Plaintiff argues that her ability to perform the lifting/carrying required in sedentary work is eroded by her use of a cane (dkt. # 19 at 8), Plaintiff has pointed to no medical evidence suggesting that she was required to use a cane during the adjudicated period. In her reply brief, she cites evidence from years before the adjudicated period (dkt. # 30 at 6), but this evidence does not establish that she required a cane during the period considered by the ALJ. Plaintiff's own testimony regarding the need for a cane

is inadequate to establish the existence of this requirement because the ALJ discounted Plaintiff's subjective allegations for unchallenged reasons. *See* AR at 37-41.

### 2. *The ALJ Did Not Err in Assessing Plaintiff's Ability to Use Her Hands*

Plaintiff cites various records showing that she was prescribed wrist braces during the adjudicated period for both her arms due to tingling and numbness. (Dkt. # 19 at 10 (citing AR at 1980, 1990, 2024).) The record shows, however, that she was instructed to wear the right wrist brace only while sleeping (AR at 1989-90), and that her left wrist brace was prescribed due to a sudden onset of pain, without any evidence of instruction to wear the brace on an ongoing basis. *See id*. at 2027. The medical record does not show that Plaintiff's use of wrist braces impacted her ability to use her hands during the adjudicated period and, again, Plaintiff's own testimony regarding her handling deficits is inadequate to establish the existence of any limitations in light of the ALJ's unchallenged reasons to discount Plaintiff's subjective testimony. Plaintiff has not shown that the ALJ erred in failing to include any hand-related limitations in the RFC assessment.

### 3. *The ALJ Did Not Err in Assessing the Impact of Plaintiff's Obesity*

Plaintiff notes that the ALJ included obesity as a severe impairment at step two, but argues that the ALJ erred in failing to consider how her obesity increased her pain, when assessing her RFC. (Dkt. # 19 at 11.) But the ALJ did address Plaintiff's pain complaints, citing evidence that Plaintiff's knee and shoulder pain improved with physical therapy, movement, and Remicade infusions. AR at 38-40. The ALJ also cited evidence showing that despite her pain, Plaintiff's physical examinations were largely normal. *Id*. Plaintiff has not shown or even argued that these findings are erroneous. Because Plaintiff has failed to identify any evidence showing

that her obesity caused limitations unaddressed by the ALJ, she has failed to meet her burden to show obesity-related error in the ALJ's RFC assessment.

####       4.       The ALJ Did Not Err in Assessing Plaintiff's Mental Limitations

Plaintiff argues that because the ALJ found her depression to be severe at step two, the ALJ erred in failing to include any mental limitations in the RFC assessment. (Dkt. # 19 at 11-13.) This argument overlooks that the ALJ included a restriction to a "routine and stable work environment" in the RFC assessment, which is consistent with his finding that Plaintiff had moderate limitations in her ability to adapt or manage herself. *See* AR at 36-37.

Furthermore, although Plaintiff points to the opinion of consultative examiner Rejoice Opera, M.D., as establishing other mental limitations, the ALJ explained that he found Dr. Opera's description of some social limitations to be unpersuasive as inconsistent with the record. AR at 41-42. Plaintiff has not assigned error to that assessment or otherwise argued that the ALJ's reasoning is insufficient. Plaintiff has pointed to no other evidence establishing the existence of mental limitations not accounted for in the RFC assessment, and thus has not shown that the ALJ erred in failing to include additional mental limitations in the RFC assessment.

### C.       The ALJ Did Not Harmfully Err in Discounting Lay Evidence

The record contains statements written by Plaintiff's grandmother Dorothea Rodda, stepfather Frank Bedoya, and mother Rizpah Bedoya. AR at 235-42, 296-97, 332-34. The ALJ found these statements unpersuasive because they were unsupported by and inconsistent with the treatment record showing improvement in physical pain with treatment, normal mental status examination findings, and Plaintiff's childcare activities. *Id*. at 42.

In the Ninth Circuit, an ALJ must provide germane reasons to discount a lay statement. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the

testimony of the lay witnesses, he must give reasons that are germane to each witness."). Plaintiff argues that the ALJ erred in finding the lay statements uncorroborated by medical records, because one would not expect family members' observations to be documented in medical records. (Dkt. # 19 at 14-15.) This argument does not establish error in the ALJ's primary finding that the lay statements are *inconsistent with* the treatment record and Plaintiff's activities, however. Because Plaintiff has not shown that the ALJ erred in finding these statements to be inconsistent with the cited records and activities, Plaintiff has not met her burden to show harmful legal error in the ALJ's discounting of the lay statements on this basis. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

D. **The ALJ Erred at Step Five**

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). Plaintiff challenges the ALJ's step-five findings, citing Appeals Council evidence contradicting the job numbers identified by the VE at the hearing. (Dkt. # 19 at 16-17 (citing AR at 14-17).) Plaintiff submitted similar evidence to the ALJ post-hearing (AR at 335-42), but the ALJ did not reference this evidence in the decision.

The ALJ's failure to address and resolve this conflict in the record was error. Plaintiff adequately challenged the VE's job numbers testimony to the ALJ as well as to the Appeals Council, thereby preserving this issue for appeal. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108-09 (9th Cir. 2017). Plaintiff presented evidence starkly contradicting the VE's testimony as to job numbers, yet relying on apparently the same source. *Compare* AR at 14-17, 335-42 *with id*. at 43-44, 85-86, 90-91. The ALJ should have resolved this conflict in the decision. *See Buck v.*

ORDER - 9

*Berryhill*, 869 F.3d 1040, 1051-52 (9th Cir. 2017). Although, as the Commissioner emphasizes (dkt. # 23 at 15-17), a VE's testimony may constitute substantial evidence to support an ALJ's step-five findings, the ALJ nonetheless erred in failing to resolve the conflict presented in the record as to the job numbers. The Commissioner's brief highlights the Appeals Council evidence that was presented regarding this conflict (*id.* at 16), without acknowledging Plaintiff's post-hearing brief (AR at 335-42) on this issue that was also submitted to the ALJ but not referenced in the decision. This case must be remanded for the ALJ to reconsider the step-five findings.[5]

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider the step-five findings.

Dated this 17th day of August, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[5] Plaintiff also suggests that the ALJ failed to rule on a request to issue a subpoena requiring the VE to bring supporting documentation to the hearing. (Dkt. # 19 at 16.) The ALJ denied that request at the hearing (AR at 53-54) and Plaintiff has not shown that this ruling deprived her of meaningful cross-examination. *See Biestek v. Berryhill*, 129 S. Ct. 1158, 1156-57 (2019). The ALJ stated that he would explain the reasons for his denial in the decision and did not, and will have another opportunity to do so on remand if Plaintiff renews her request for a subpoena.

ORDER - 10